IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 8, 2022 Session

## LAFARGE NORTH AMERICA v. WARREN MILLS ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-002224-10  Mary L. Wagner, Judge**
_____

**No. W2020-00959-COA-R3-CV**
_____

This is the second appeal of this case.  After remand from the first appeal, the trial court denied Appellant's motion to reopen discovery concerning Appellant's counterclaim, wherein he asserted that the guaranty he signed was void and unenforceable.  In the first appeal, this Court affirmed the trial court's dismissal of Appellant's counterclaim, finding that the disputed guaranty was, in fact, valid.  As such, we conclude that the trial court did not err in precluding further discovery on the dismissed counterclaim.  We grant Appellee's request for an award of attorney's fees and costs for frivolous appeal, and remand the case for determination of Appellee's reasonable appellate attorney's fees and costs and entry of judgment on same.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Ivan D. Harris, Collierville, Tennessee, for the appellant, Warren Mills.

Earl W. Houston, II and Abigail A. Stephens, Memphis, Tennessee, for the appellee, LaFarge North America.

## OPINION

This is the second appeal of this case.  In ***LaFarge North America v. Mills***, No. W2017-00431-COA-R3-CV, 2018 WL 6574978 (Tenn. Ct. App. Dec. 13, 2018) ("***LaFarge I***"), this Court reversed the trial court's grant of summary judgment in favor of Appellee LaFarge North America ("LaFarge") and remanded for entry of summary

judgment in favor of Appellant Warren Mills. Mr. Mills was one of three owners of Choctaw, and LaFarge supplied concrete to Choctaw. Until 2009, amounts due from Choctaw to LaFarge were personally guaranteed by a previous owner, William Carrier. It is undisputed that, in 2009, Choctaw owed LaFarge $266,557.14 on its credit account. The same year, the original guarantor, Mr. Carrier, declared bankruptcy. Mr. Mills then approached LaFarge to continue selling goods to Choctaw on credit. To this end, on December 22, 2009, Mr. Mills signed a credit application and guaranty agreement (the "Guaranty"). After Mr. Mills signed the Guaranty, it is undisputed that Choctaw purchased $75,990.20 in goods from LaFarge on a cash-on-delivery basis and made payments of $79,890.94 during this same period. LaFarge applied these payments against Choctaw's oldest debts, i.e., the debt guaranteed by Mr. Carrier. By the end of April 2010, Choctaw had a remaining balance of $275,435.09 on its credit account.

On April 30, 2010, LaFarge filed suit against Choctaw, Mr. Carrier, and Mr. Mills alleging breach of contract against Choctaw and breach of guaranty against Messrs. Carrier and Mills. By its complaint, LaFarge sought to recover, from Choctaw and/or Mr. Carrier, the $275,435.09 (principal and interest, see *supra*) plus a per diem finance charge. Because it had applied the $79,890.94 in payments Choctaw made after Mr. Mills signed the Guaranty to the remaining debt under the line of credit on which Mr. Carrier was the guarantor, LaFarge also sought to recover, from Mr. Mills, $99,135.96 plus a per diem finance charge of $48.89 accruing from April 30, 2010 through the date of collection. On June 21, 2010, Mr. Mills filed an answer and counterclaim for "intentional misrepresentation and fraudulent inducement to contract." Mr. Mills' primary allegation was that Choctaw misrepresented or fraudulently induced Mr. Mills to enter into the Guaranty so that "contrary to its representations to Mills . . . LaFarge [could] appl[y] the payments made by Choctaw on a pre-payment/cash-on-delivery basis, to the Choctaw past due account, thus intending to make Mills personally liable for product sales for which LaFarge had already received payment." Mr. Mills further alleged that Choctaw obtained no goods on the open credit account after December 22, 2009 because it had paid for all goods, from that date, by check tendered at the time of purchase. Accordingly, Mr. Mills alleged that no debts were incurred after the date he executed his Guaranty. In his counterclaim, Mr. Mills asked for "a judgment for intentional misrepresentation and/or fraudulent inducement to contract for the full amount of attorney's fees, costs, expenses and damages to Mills' personal and professional reputation that Mills has suffered as a result of LaFarge's actions, including post-judgment interest."

The parties filed cross-motions for summary judgment. In his motion for summary judgment, Mr. Mills stated, "LaFarge's Verified Complaint for Damages seeks relief against Mills as a personal guarantor of some of the other named Defendants. Accordingly, and for the reasons set forth in the accompanying papers filed herewith, Mills prays this Court grant him Summary Judgment as to LaFarge's Verified Complaint for Damages against him as a Defendant." Importantly, Mr. Mills did not mention his counterclaim. However, in the trial court's April 13, 2015 order granting LaFarge's motion for summary

judgment (which was appealed in *LaFarge I*), it clearly ruled on Mr. Mills' counterclaim, to-wit: "All facts relating to Mr. Mills' counterclaim were reviewed in connection with the enforceability of the Guaranty, as the claims and counter claims are inseparable. Because the Guaranty that Mr. Mills signed was determined to be enforceable as a matter of law, all allegations made against LaFarge in Mr. Mills' counterclaim should be dismissed as a matter of law."

In *LaFarge I*, Mr. Mills did not appeal the trial court's dismissal of his counterclaim; rather, as set out in *LaFarge I*, "The sole issue for review is whether the trial court erred in granting summary judgment in favor of LaFarge and denying Mr. Mills' motion for summary judgment." This Court ultimately determined that LaFarge was not entitled to apply the payments made after Mr. Mills signed the Guaranty to debts accrued while Mr. Carrier's guaranty was in place. Specifically, we held that:

> At oral argument before this Court, LaFarge's attorney conceded that, on the issuance of the stay in Mr. Carrier's bankruptcy case, Choctaw's outstanding debt of $266,557.14, which was secured by Mr. Carrier's personal guaranty, became unsecured debt. Therefore, the $75,990.20, which Choctaw accrued after Mr. Mills signed his guaranty, was the only debt for which the surety, i.e., Mr. Mills, was bound. For the reasons discussed above, the trial court's ruling that LaFarge properly applied the $79,890.94 to the $266,557.14 debt is not in line with Tennessee law. Under existing Tennessee law, the $79,890.94 should have been applied first to the debt "for which a surety is bound," i.e., the $75,990.00. It is undisputed that, after Mr. Mills executed the guaranty, Choctaw made payments more than sufficient to cover the $75,990.00 in goods it received. Proper application of this amount to the guaranteed debt extinguishes that debt such that Mr. Mills' guaranty is satisfied. As such, Mr. Mills is entitled to summary judgment in his favor and is not liable for any interest, costs, or attorney's fees.

*LaFarge I*, 2018 WL 6574978, at *5.

Importantly, before reaching the ultimate conclusion that Mr. Mills was entitled to summary judgment—a ruling that ostensibly dismissed any claims that LaFarge made against Mr. Mills—this Court discussed the enforceability of the Guaranty signed by Mr. Mills and concluded, as did the trial court, that the Guaranty was valid and enforceable, to-wit:

> In his appellate brief, Mr. Mills makes several arguments concerning whether the guaranty he signed is a valid and enforceable contract. We have reviewed Mr. Mills' arguments, including that the guaranty is ambiguous, that it does not satisfy the prima facie elements for a valid contract, and that it violates the Statute of Frauds. We are not persuaded that the guaranty is

- 3 -

unenforceable. The document was undisputedly signed by Mr. Mills, whom the trial court found to be "a sophisticated person that understands personal guarantees and has been in the cement/concrete industry for decades." The parties do not dispute this finding. The guaranty itself is not ambiguous, and we find no violation of the Statute of Frauds. Accordingly, we agree with the trial court's ruling that the guaranty is an enforceable contract.

*LaFarge I*, 2018 WL 6574978, at \*3. The trial court's denial of Mr. Mills' counterclaim was premised on the enforceability of the Guaranty. Thus, if the Guaranty was enforceable, *ipso facto*, it was not procured through fraud or misrepresentation as asserted by Mr. Mills in his counterclaim. Accordingly, our ruling that the Guaranty was enforceable was also an affirmance of the trial court's dismissal of Mr. Mills' counterclaim.

As is relevant to the instant appeal, on March 25, 2019, after our mandate issued in *LaFarge I*,[1] Mr. Mills filed a motion to reopen discovery in the trial court, wherein he asserted that, "Mr. Mills is entitled to pursue his counterclaim," including discovery thereon. By order of September 24, 2019, the trial court denied Mr. Mills' motion. On October 14, 2019, Mr. Mills filed a motion to alter or amend the September 24, 2019 order; the trial court denied the motion to alter or amend by order of June 23, 2020. On July 17, 2020, Mr. Mills filed a petition for writ of mandamus in this Court. By order of August 20, 2020, we denied the petition but ruled that Mr. Mills' filing would be treated as a valid and timely notice of appeal.

Mr. Mills raises the following issue for review as stated in his brief:

Did the Shelby County Circuit Court fail to properly follow the judgment of the Tennessee Court of Appeals in Case No. W2017-00431-COA-R3-CV (the "Prior Appeal") wherein the Court of Appeals specifically reversed the trial court's order granting summary judgment to the Appellee, LaFarge?

The crux of Mr. Mills' issue is whether the trial court erred in dismissing Mr. Mills' counterclaim based on our holding in *LaFarge I*. In the posture of Appellee, LaFarge asks this Court to award its appellate attorney's fees and costs on the ground of frivolous appeal.

Turning to Mr. Mills' issue, as noted above, in *LaFarge I*, Mr. Mills did not raise an issue concerning the trial court's dismissal of his counterclaim. This Court has held that a party waives the right to seek appellate review in the second appeal of an issue not raised in the first appeal. *See Melton v. Melton*, No. M2003-01420-COA-R10-CV, 2004 WL 63437, at \*3 (Tenn. Ct. App. Jan. 13, 2004); *see also Moore v. Taylor*, No. M2013-01590-

---

[1] We note that Judge Donna Fields was the trial judge over the case prior to the first appeal. Judge Fields retired in August 2016, and the case was assigned to Judge Mary Wagner on remand from *LaFarge I*.

COA-R3-CV, 2014 WL 2999744, at *3 (Tenn. Ct. App. June 30, 2014) ("We find that Wife waived her right to seek appellate review concerning either alimony or attorney's fees by not raising them on the first appeal."); *accord* ***Rosebrough v. Caldwell***, No. W2020-00538-COA-R3-CV, 2021 WL 5769961 (Tenn. Ct. App. Dec. 6, 2021).

However, even if we assume, *arguendo*, that Mr. Mills did not waive the issue of whether the trial court properly dismissed his counterclaim, his counterclaim is based solely on his contention that the Guaranty he signed was void. As we noted in ***LaFarge I***, Mr. Mills asserted that the Guaranty was "ambiguous," did not "satisfy the prima facie elements for a valid contract," was procured by fraud, and violated the Statute of Frauds. After reviewing Mr. Mills' arguments concerning the validity of the Guaranty, we ultimately "agree[d] with the trial court's ruling that the guaranty is an enforceable contract." ***LaFarge I***, 2018 WL 6574978, at *3. The sole basis for Mr. Mills' counterclaim was that the Guaranty was invalid or void. Having affirmed the trial court's holding in ***LaFarge I*** that the Guaranty was, in fact, valid and enforceable, there was no basis for Mr. Mills' effort to pursue further litigation of his counterclaim. Accordingly, the trial court correctly dismissed Mr. Mills' counterclaim and, following our remand in ***LaFarge I***, also correctly declined to reopen discovery for the purpose of allowing Mr. Mills to proceed with his counterclaim. In short, the trial court's dismissal of Mr. Mills' counterclaim was affirmed by our conclusion in ***LaFarge I*** that the Guaranty was valid and enforceable.

Turning to LaFarge's request for damages for frivolous appeal under Tennessee Code Annotated section 27-1-122, the statute provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122.

The decision whether to award damages for a frivolous appeal rests solely in this Court's discretion. ***Chiozza v. Chiozza***, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). "A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." ***Indus. Dev. Bd. v. Hancock***, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). As discussed above, not only did Mr. Mills not raise the issue of his counterclaim in the first appeal of this case, but he also failed to note our holding in ***LaFarge I*** that the Guaranty was valid and enforceable. Finally, he failed to comprehend that the existence of a valid and enforceable Guaranty precluded any claims he had that were based on the Guaranty being void or unenforceable. For these reasons, we conclude that this is, indeed, a frivolous appeal. As such, LaFarge should not have to bear the expense of this unnecessary second appeal. Therefore, we grant LaFarge's request for attorney's fees, and

the case is remanded to the trial court for determination of LaFarge's reasonable attorney's fees and costs incurred in defense of this appeal and for entry of judgment on same.

For the foregoing reasons, we affirm the trial court's order. LaFarge's request for appellate attorney's fees and costs on the ground of frivolous appeal is granted, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion, including, but not limited to, determination of LaFarge's reasonable appellate attorney's fees and costs and entry of judgment on same. Costs of the appeal are assessed to the Appellant, Warren Mills, for all of which execution may issue if necessary.

_____s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE
